

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAAC FISHMAN, CUSTODIAN FOR THE IBF FOUNDATION, ON BEHALF OF ITSELF and ALL OTHERS SIMILARLY SITUATED, | ) CASE NO.<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CLASS ACTION COMPLAINT FOR<br>) VIOLATION OF THE FEDERAL |
| QIAO XING UNIVERSAL TELEPHONE, INC., WU RUI LIN, WU ZHI-YANG, ALBERT LEUNG, SONNY KWOK WING HUNG, ZE YUN MU, YI HONG ZHANG and GROBSTEIN, HORWATH & COMPANY LLP, | ) SECURITIES LAWS<br>)<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>) |
| Defendants. | )<br>) |

Plaintiff Isaac Fishman, custodian for the IBF Foundation ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of the public documents and announcements made by Defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding Qiao Xing Universal Telephone, Inc. ("Qiao Xing" or the "Company") as follows:

485948

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons who acquired the securities of Qiao Xing during the period October 31, 2006, through and including July 16, 2007 (the "Class Period"), to recover damages caused by Defendants' violation of the federal securities laws (the "Class").    During the Class Period, Defendants issued to the investing public false and misleading financial statements and press releases concerning the Company's publicly reported revenues and earnings and true state of internal controls over financial reporting.  Moreover, the Company omitted to state material information necessary to be issued in order to make prior statements not misleading concerning its accounting practices and compliance with Generally Accepted Accounting Principles ("GAAP").

2.      On July 17, 2007, before the market opened for trading in New York, Qiao Xing announced it was restating results for fiscal year ended December 31, 2005, fiscal year ended December 31, 2004, and fiscal year ended December 31, 2003, and taking remediation steps to address material weaknesses in the Company's internal control over financial reporting and ineffectiveness of disclosure controls and procedures.

3.      According to the Company, the restatement stemmed from information unearthed during recent audits of one of the Company's listed subsidiaries.  The audits unearthed evidence that the Company calculated its financial results by using both inaccurate assumptions and faulty valuation methodologies to process data that had been previously provided by management. This disclosure caused the Company's stock to plummet approximately 21% on unusually heavy trading volume.

485948

4.    These disclosures, discussed below, contradicted much of the information Defendants issued to the market during the Class Period concerning the Company's reported revenues and results.

5.    As detailed below, Qiao Xing insiders, however, faired far better than public stockholders.  Indeed, while in possession of material, non-public information, insiders sold substantial amounts of their Company holdings, achieved greater liquidity, and spun-off a subsidiary for $160 million in cash.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b) and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. §240.10b-5.

7.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1331.

8.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act as the Company's stock trades on the NASDAQ.

9.    In connection with the acts, transactions and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## THE PARTIES

10.    Plaintiff acquired shares of Qiao Xing common stock during the Class Period as per the annexed certificate and suffered economic damages.

485948

11.    Defendant Qiao Xing is incorporated in the British Virgin Islands and maintains its executive offices at Qiao Xing Science Industrial Park, Tang Quan, Huizhou City, People's Republic of China.

12.    Qiao Xing, founded in 1992 by defendant Wu Rui Lin, engages in the manufacture and distribution of telecommunications products in the People's Republic of China. Its product portfolio includes telecommunications terminals and related products, including fixed wireless phones; VoIP telephones; advanced mobile phones; and PDAs and consumer electronic products, including MP3 players, cash registers, and set-top-box products. The company also designs GSM mobile phones.  In addition, it engages in the research and development, and distribution of mobile phones; and the design and distribution of fixed line telephones, wireless telephones, and fax machines. Qiao Xing distributes its products through independent regional distributors, as well as after-sales service centers, including wholesale agencies.

13.    Qiao Xing was under an obligation, and had a duty, to promptly disseminate truthful and accurate information with respect to Qiao Xing and to promptly correct any public statements issued by or on behalf of the Company which had become false or misleading.

14.    Qiao Xing knew or recklessly disregarded that the misleading statements and omissions complained of herein would adversely affect the integrity of the market for the Company's stock and would cause the price of the Company's common stock to become artificially inflated.  Defendants acted knowingly or in such a reckless manner as to constitute a fraud and deceit upon Plaintiff and the other members of the Class.

15.    Defendant Wu Rui Lin is the founder, Chairman and Chief Executive Officer of the Company.  Mr. Wu Rui Lin and members of his family beneficially owned or controlled approximately 26.7% of the outstanding shares of Qiao Xing as of December 31, 2006.  He has

485948

also served as the chairman of Qiao Xing Mobile Communication Co. ("QXMC") and a director of CEC Telecom Co., Ltd. since February 2003.

16.     Defendant Wu Zhi-Yang is the Vice-Chairman and Secretary of the Company. He is also the son of defendant Wu Rui Lin, and has served as the chairman of CEC Telecom Co., Ltd. and CEC Mobile Ltd. since February 2003.

17.     Defendant Albert Leung is the Company's Chief Financial Officer and Principal Accounting Officer.

18.     Defendant Sonny Kwok Wing Hung is a director of the Company and a member of the audit committee.    As a member of the audit committee, he had responsibility to recommend annually to the board of directors the appointment of the Company's independent public accountants; discuss and review the scope and the fees of the prospective annual audit and review the results with the independent public accountants; review and approve non-audit services of the independent public accountants; review compliance with existing accounting and financial policies; review the adequacy of the Company's financial organization; and review management's procedures and policies relative to the adequacy of the Company's internal accounting controls and compliance with U.S. federal and state laws relating to financial reporting.

19.     Defendant Ze Yun Mu is a director of the Company and a member of the audit committee.    As a member of the audit committee, he had responsibility to recommend annually to the board of directors the appointment of the Company's independent public accountants; discuss and review the scope and the fees of the prospective annual audit and review the results with the independent public accountants; review and approve non-audit services of the independent public accountants; review compliance with existing accounting and financial

485948

policies; review the adequacy of the Company's financial organization; and review management's procedures and policies relative to the adequacy of the Company's internal accounting controls and compliance with U.S. federal and state laws relating to financial reporting.

20.    Defendant Yi Hong Zhang is a director of the Company and a member of the audit committee.  As a member of the audit committee, he had responsibility to recommend annually to the board of directors the appointment of the Company's independent public accountants; discuss and review the scope and the fees of the prospective annual audit and review the results with the independent public accountants; review and approve non-audit services of the independent public accountants; review compliance with existing accounting and financial policies; review the adequacy of the Company's financial organization; and review management's procedures and policies relative to the adequacy of the Company's internal accounting controls and compliance with U.S. federal and state laws relating to financial reporting.

21.    Messrs. Wu Rui Lin, Wu Zhi-Yang, Albert Leung, Sonny Kwok Wing Hung, Ze Yun Mu, and Yi Hong Zhang are sometimes referred to as the "Individual Defendants."

22.    The Individual Defendants, by reason of their direct and substantial management positions and responsibilities during the time relevant to this Complaint, were "controlling persons" of Qiao Xing within the meaning of section 20 of the Exchange Act and had the power and influence to control Qiao Xing and exercised such control to cause the Company to engage in the violations and improper practices complained of herein. The Individual Defendants, because of their positions as officers and directors of Qiao Xing had access to adverse non-public information about the Company's financial condition and future prospects.

485948

23. The statements made by Defendants as outlined below were materially false and misleading when made. Defendants had no reasonable or adequate basis to justify or support their earnings announcements. The true financial and operating condition of the Company, which was known or recklessly disregarded by the Defendants, remained concealed from the investing public. Defendants, who were under a duty to disclose those facts, instead misrepresented or concealed them during the relevant period herein.

24. Defendant Grobstein, Horwath & Company LLP ("Grobstein Horwath") maintains its principal office at 15233 Ventura Blvd., Sherman Oaks, California, 91403-2201, and a second office at 650 Town Center Drive, Costa Mesa, California 92626-1989. Grobstein Horwath, founded in 1969, provides a full range of accounting, tax, and consulting services. Grobstein Horwath specializes in services geared toward clients on both the American and the Asian sides of the Pacific Rim.

25. Defendant Grobstein Horwath is affiliated with Horwath International, an integrated organization of independent accounting and management consulting firms. Grobstein Horwath served as Qiao Xing's auditor and principal accounting firm commencing prior to the Class Period herein and continuing at all relevant times. Grobstein Horwath acted in that capacity pursuant to the terms of contracts it had with Qiao Xing which required, *inter alia*, Grobstein Horwath to audit Qiao Xing's financial statements in accordance with Generally Accepted Auditing Standards ("GAAS") and to report the results of those audits to Qiao Xing, its board of directors and to Plaintiff and the Class. With knowledge of Qiao Xing's true financial condition, as alleged below, or in reckless disregard thereof, Grobstein Horwath certified the false and misleading financial statements of Qiao Xing described below and provided unqualified Independent Auditors' Reports which were included in various of the Company's

- 7 -

SEC filings and public disseminations. These unqualified audit opinions and reports greatly enhanced and facilitated the fraud alleged below and violated GAAS and GAAP, which Grobstein Horwath was obliged to observe. In addition, pursuant to Defendants' scheme, Grobstein Horwath, jointly with Defendants, arranged for and facilitated the fraudulent accounting practices utilized by Qiao Xing during the Class Period. In return for providing these services, Grobstein Horwath received substantial compensation from Qiao Xing, while still failing to properly perform its contractual, disclosure and other obligations owed to Qiao Xing and its public investors.

26. Defendant Grobstein Horwath, by virtue of its position as independent accountant and auditor of Qiao Xing, had access to the files and key employees of the Company at all relevant times. As a result of the auditing services it provided to Qiao Xing, Grobstein Horwath had continual access to and knowledge of Qiao Xing's confidential, corporate, financial, operating and business information. Grobstein Horwath knew or recklessly disregarded Qiao Xing's true financial and operating situation, and intentionally or recklessly failed to take steps which, as Qiao Xing's auditor, Grobstein Horwath could and should have taken to fully and fairly disclose that situation to the investing public. Grobstein Horwath falsely represented that is audits of Qiao Xing financial statements had been conducted in accordance with GAAS and wrongfully issued "clean" or unqualified opinions or certifications that those financial statements fairly presented Qiao Xing's financial condition and results of operations in conformity with GAAP.

27. As the Company's principle accounting firm and auditor, Grobstein Horwath frequently and regularly met with Company personnel, had access to internal corporate data and reports and had the opportunity to observe the Company's business and business practice and to

- 8 -

test the Company's internal and publicly reported financial statements as well as the Company's internal controls structure.

28. Grobstein Horwath knowingly participated in and acquiesced in the presentation by its audit client of false and misleading financial information to the investing public which did not adequately account for, among other things, the Company's net income. As a result of Grobstein Horwath's knowing misconduct, Grobstein Horwath is jointly and severally liable to Plaintiff and the other members of the Class.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the Class. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns.

30. The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, Qiao Xing had more than 29.6 million shares of stock outstanding which were actively traded on the NASDAQ throughout the Class Period. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Qiao Xing, its underwriters or its transfer agent and may be notified of the pendency of this action by mail using the form of notice similar to that customarily used in securities class actions.

31. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

485948

32.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.     Whether Defendants violated the Exchange Act;

      b.     Whether Defendants omitted and/or misrepresented material facts;

      c.     Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

      d.     Whether Defendants knew or recklessly disregarded that their statements were false and misleading.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FALSE AND MISLEADING STATEMENTS
## DURING THE CLASS PERIOD

35.     The Class Period commenced on October 17, 2006, when the Company filed its definitive proxy statement with the SEC on Form 14A.     The proxy included information pertaining to the Company's purchases, sales, payables and receivables for fiscal years 2003, 2004 and 2005. The closing price of the stock that day was $14.68 per share.

485948

36.    The proxy touted the existence of the Company's audit committee and its responsibilities that included assuring compliance with applicable accounting standards and that the Company maintained adequate internal controls.  It stated, in part, as follows:

> Our board of directors has the responsibility for establishing broad corporate policies and for our overall performance, although it is not involved in day-to-day operating details. The board meets regularly throughout the year, including the annual organization meeting following the annual meeting of shareholders, to review significant developments affecting us and to act upon matters requiring board approval. It also holds special meetings as required from time to time when important matters arise requiring board action between scheduled meetings.
>
> We have established an audit committee, which currently consists of Sonny Kwok Wing Hung, Ze Yun Mu and Yi Hong Zhang. Its functions are to:
>
> - recommend annually to our board of directors the appointment of our independent public accountants;
>
> - discuss and review the scope and the fees of the prospective annual audit and review the results with the independent public accountants;
>
> - review and approve non-audit services of the independent public accountants;
>
> - review compliance with our existing accounting and financial policies;
>
> - review the adequacy of our financial organization; and
>
> - review our management's procedures and policies relative to the adequacy of our internal accounting controls and compliance with U.S. federal and state laws relating to financial reporting.

37.    The information contained in the proxy concerning financial information for fiscal years 2003, 2004 and 2005 and the supervisory role of the audit committee was false and misleading when made because the Company in fact, as later admitted in the context of a broad restatement, lacked adequate internal controls and was therefore unable to ascertain its true financial condition and was unable to quantify its net income or fair value of acquired assets.

38.    On October 31, 2006, the Company released its second fiscal quarter 2006 results for the period ended on June 31, 2006.

39.    Specifically, the Company reported that it acquired the remaining 20% stake that it previously did not own in its subsidiary Qiao Xing Mobile Communications in exchange for $43 million in cash and Company stock. The pre-market opening press release stated in part:

> In addition to the increase in operating performance, Qiao Xing Universal Telephone [The Defendant] herein announces an acquisition from the minority shareholder [of] the remaining 20% equity interest of Qiao Xing Mobile Communication, or QXMC, a British Virgin Islands company that holds a 93.4% interest in the Sino-foreign joint venture CEC Telecom, or CECT, for $43mn USD, to be paid partly in cash and partly in shares of Qiao Xing Universal Telephone. The valuation of QXMC was based on the implied valuations from the convertible debenture that was completed in June of this year. The acquisition is expected to be finalized no later than the end of December 2006, and the closing remains subject to customary closing conditions. Qiao Xing Universal Telephone arrived at the decision to make this acquisition based on the historical operating performance of CECT, and also the strategic consideration of converting QXMC into a 100% subsidiary to streamline the ownership structure of CECT.
>
> *    *    *
>
> A financing solution reached with DKR Management via an issuance of $24mn USD in stock and 26mn USD in a convertible provided Funds for the acquisition of the 20% minority interest in QXMC. Terms were finalized on September 18th, and consist of 2 million shares placed at $12 and a CB with a conversion price of $14.30.
>
> In accordance with Nasdaq listing rules, a consolidated income statement for the first half of 2006 and an interim balance sheet shall be filed by December 31, 2006.

40.    The information contained in the press release concerning the valuation of Qiao Xing or QXMC was false and misleading when made because the Company lacked adequate

485948

internal controls and unable to ascertain its true financial condition and unable to quantify its fair value or the fair value of acquired assets.

41.    On November 1, 2006, securities research firm Dutton Associates released a "Research Note" report, addressing the Company's October 31, 2006 press release, and issued a "buy" rating with a 12-month target price of $17.44.  The report noted that, "since our last update report released on August 30, share price of XING had surged from $11.20…."

42.    On January 3, 2007, the Company filed a prospectus and registration statement with the SEC on behalf of certain selling shareholders offering over 4 million Qiao Xing shares. Although the Company itself did not sell any shares in this transaction, the prospectus noted that in conjunction with the offering, "we may receive up to $7,800,007 from the exercise, if any, of warrants by the selling shareholders."

43.    Nearly two-thirds of the Qiao Xing stock offered for sale was offered by affiliates of DKR Management, the entity involved in the financing and sale of QXMC to Qiao Xing and now disposing those inflated Qiao Xing shares received in the QXMC transaction through the efforts of Qiao Xing.

44.    The prospectus noted that the Company's, "audited consolidated financial statements as of December 31, 2005 and for each of the three years ended December 31, 2005, have been incorporated by reference in this prospectus in reliance upon the report of Grobstein, Horwath and Company, LLP, Sherman Oaks, California, independent registered public accounting firm, as set forth in their report thereon included therein and incorporated herein by reference. Such consolidated financial statements are incorporated herein by reference in reliance upon such report given on the authority of such firm as experts in accounting and auditing."

45.    Each of the annual reports incorporated by reference in the prospectus contain:

- 13 -

- the independent auditor report from Grobstein Horwath stating that the audits were conducted "in accordance with the standards of the Public Company Oversight Board," and that in all material respects, the consolidated results of operations "were in conformity with U.S. generally accepted accounting principles;" and,

- Certifications by the Chief Executive Officer and the Chief Financial Officer pursuant to the Sarbanes-Oxley Act of 2002 attesting that the annual report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that, "the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

46.    The information contained in the prospectus concerning financial information for fiscal years 2003, 2004 and 2005, was false and misleading when made because the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition and was unable to quantify its net income or fair value of acquired assets.

47.    On April 19, 2007, the Company issued a press release announcing that its major subsidiary, QXMC, had filed a registration statement with the SEC for a proposed initial public offering of ordinary shares on the New York Stock Exchange. According to the press release, the proceeds to be received by QXMC from the proposed IPO will in part be used to repay shareholder loans to Qiao Xing.   "When the IPO is consummated, Qiao Xing will still maintain a majority stake (more than 51%) in QXMC." The stock price of Qiao Xing closed at $17.38 per share.

48.    On or about May 3, 2007, the QXMC prospectus was filed with the SEC. According to this prospectus, "on May 2, 2007, DKR SoundShore Oasis Holding Fund Ltd. and CEDAR DKR Holding Fund Ltd., the holders of senior convertible notes issued by Qiao Xing in June 2006, exchanged all of their notes for 7,800,000 of our ordinary shares held by Qiao Xing."

- 14 -

485948

49.    Over 833,000 QXMC shares in the IPO were being offered for sale by DKR SoundShore Oasis Holding Fund Ltd. and CEDAR DKR Holding Fund Ltd., entities affiliated with DKR Management, the entity involved in the financing and sale of QXMC to Qiao Xing and again cashing out its investment through the efforts of Qiao Xing.

50.    According to the QXMC registration statement and prospectus, upon completion of the IPO, the family of Wu Rui Lin would maintain a 61.3% interest in QXMC – amounting to 32.2 million shares trading on the New York Stock Exchange.

51.    The QXMC prospectus also stated that, "our independent registered public accounting firm, in the course of auditing our consolidated financial statements, noted several material weaknesses and significant deficiencies in our internal control over financial reporting. This material weakness also contributed to the following individual material weaknesses: (1) ineffective controls over the accounting for the acquisition of our initial 65% equity interest in CECT in 2003 and the additional 25% equity interest from the minority shareholder in 2005, (2) ineffective controls over the completeness, accuracy and presentation and disclosure of our revenue from technical services and the sale of co-operative products, and (3) ineffective controls over the accuracy and presentation and disclosure of deferred taxes." Qiao Xing made no statement or announcement correcting its own previously issued financial statements pertaining to these same transactions as the Company was required to do in order to make the prior statements not misleading.

52.    Bloomberg News reported on May 3, 2007, that though short of expectations, $160 million was raised as QXMC "and investors sold 13.3 million shares for $12 each." The stock price of Qiao Xing closed at $15.58 per share.

485948

53.    On May 7, 2007, the Company issued a press release announcing that it's HZQXCI subsidiary had launched 11 new phone models. "With long experience of proven successes in developing sales of indoor phone sets in such markets, HZQXCI is expected to take advantage of the market potential by discerning the next generation of hot-selling mobile phones and by quick development of these products made possible by its strong capabilities in research and development."

54.    At the bottom of this press release, defendant Wu Rui Lin was quoted as saying, "owing to the involvement of the Company's management in the IPO of Qiao Xing's subsidiary, Qiao Xing Mobile Communication Co., Ltd., Qiao Xing's annual report for the fiscal year of 2006 will take a longer time to prepare than the investors would expect. The Company remains committed to providing periodic financial information above and beyond what is required by the regulatory authorities.  In addition to semi-annual financial statements and full year annual reports, we also release of our own volition financial information relating to the first and the third quarters.  We target releasing the 2006 annual reports on Form 20-F in the middle of June, 2007 and financial information in respect of the first quarter of 2007 shortly afterwards.  When the specific release date is fixed, we will inform the public via a press release."

55.    This press release was false and misleading because the Company knew it would have to restate several years worth of financial statements and reveal that it had material weaknesses in internal control and that the delay in revealing this information was necessary to enable the Company to consummate the QXMC IPO and raise needed capital in order to repay itself and DKR Management and to provide value to the Wu Rui Lin family's stake in QXMC.

56.    On May 16, 2007, the Company issued a press release titled, "Qiao Xing Universal's Major Subsidiary Qiao Xing Mobile Reports First Quarter 2007 Financial Results."

485948

The press release noted that QXMC revenues had increased 44.1% from the year earlier period and that gross profit margin had increased from 17.3% to 23.2%. Nowhere in the press release did the Company reveal that it would need to restate several years worth of financial statements nor that it suffered material weaknesses in its internal controls over financial reporting.

57.    On June 4, 2007, research firm Dutton Associates released a "Research Note" report. The report noted that, "since our last research note on Qiao Xing Universal Telephone, Inc. (Qiao Xing) released on February 14, 2007, we have suspended our research coverage on the stock. This is mainly due company management's concerns over the release of non-public information related to the pending spin off of its mobile phone manufacturing operation under its CECT subsidiary, which has subsequently listed on the New York Stock Exchange in early May under the quote of QXM. The subsequent plummeting of the share price of Qiao Xing from nearly $20 in February to below $13.0 recently was partly due to the poor performance of QXM since its debut and partly due to institutional investors' disappointment over the lack of transparency related to the long-delayed announcement of Qiao Xing's final results for the year ended December 31, 2006."

58.    On June 20, 2007, before the market opened, the Company issued a press release announcing that, "company will need more time than previously estimated to prepare its annual report on Form 20-F for the fiscal year 2006. … extra work is required to coordinate between the different auditors, finance teams and audit committees of Qiao Xing Mobile Communication Co., Ltd. and the Company in connection with accounting matters during the preparation of the annual report." The price of Qiao Xing closed down $0.61 to $12.73 per share.

59.    This press release was false and misleading because it did not reveal that the Company knew it would have to restate several years worth of financial statements and that it

485948

suffered material weaknesses in its internal controls.

60.    On July 13, 2007, at 7:30 am EST, the Company issued another press release regarding its delayed financial reporting. The company reported that "it has scheduled to file its 2006 Annual Report on Form 20-F on July 16. In a prior release dated June 20, the Company undertook to file the annual report on or before July 15. Subsequently, the Company filed the Notification of Late Filing with the SEC that automatically gave the Company an option to file the annual report on or before the fifteenth calendar day following June 30, 2007. Since July 15 falls on a Sunday, the filing deadline is automatically extended to July 16. Qiao Xing management believes that it will not violate any requirement of NASDAQ by filing the 20-F on July 16." This press release was false and misleading because it did not reveal that the Company knew it would have to restate several years worth of financial statements and that it suffered material weaknesses in its internal controls.

61.    Two hours later, but still before the market opened, the Company issued another press release which would knock news of the delayed filing off the top spot in online news reports. This newer press release, issued just minutes before the market open, touted one of the Company's handsets.

62.    This press release was false and misleading because it did not reveal that the Company knew it would have to restate several years of financial statements and that it suffered material weaknesses in its internal controls.

63.    The sole purpose of issuing this press release was to obfuscate further that the Company was seriously delayed in reporting its true financial condition. The price of the stock increased $1.74 per share, from $12.21 to $13.95 on nearly three times average daily volume.

- 18 -

485948

## THE TRUTH IS REVEALED

64.    On July 17, 2007, before the market opened, the Company announced that "it

filed with (the) SEC a Form 20-F to release its 2006 annual report and to restate its financial data

for the years 2005, 2004 and 2003."

65.    According to the press release issued by the Company:

> In connection with the audits of QXMC's financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.

> As a result management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003. In the restated financial statements, net income was reduced by Rmb 3.8 million in 2005, Rmb 21.5 million in 2004, and Rmb 16.3 million in 2003.

> The restatements are described at the beginning of the Form 20-F, in Item 5 Operating and Financial Review and Prospects of the Form 20-F and in Note 2 in the 2006 financial statements of XING.

> In light of the restatements, the Company will need to improve certain aspects of its internal control over financial reporting, as described in Item 15 of the Form 20-F.

66.    The Form 20-F filed by the Company with the SEC on July 17, 2007, revealed

that the Company would restate its financial data for the three years ended December 31, 2005.

The Form 20-F stated in relevant part, at Item 5:

> **RESTATEMENT OF CONSOLIDATED**
> **FINANCIAL STATEMENTS**

> The information contained in this MD&A has been adjusted to reflect the restatement of our previously issued financial statements and other financial information, as more fully described below, at the beginning of this Form 20-F and in Note 2 to our audited consolidated financial statements for the year ended December 31, 2006.

> Qiao Xing Mobile Communication Co., Ltd. (QXMC), a

consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's consolidated financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.

As a result, management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003 for the items discussed below. These items resulted in adjustments that reduced net income by Rmb 3,798,000 in 2005, Rmb 21,458,000 in 2004, and Rmb 16,287,000 in 2003.

(i)     In QXMC's acquisition of its initial 65% interest in CECT in February 2003 and QXMC's acquisition of an additional 25% in CECT in July 2005, certain assumptions and certain valuation methods to process data provided by management were used by the valuation specialist engaged by the Company in determining the fair value adjustments assigned to the assets acquired and liabilities assumed. Management has reassessed the assumptions and the valuation methods used by the valuation specialist, and, as a result of this reassessment, the Company has restated its prior years' consolidated financial statements to reflect adjustments that have been made to the fair value of acquired assets (including equity investments and intangible assets) and the recognition of deferred tax assets and liabilities as of the date of the acquisitions and thereafter.

(ii)    As a result of an incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent," to transactions in which a subsidiary of the Company collected and remitted monies on behalf of certain suppliers and their clients without acting as a principal or assuming the primary obligation in the relationship, the sales revenue and cost of goods sold during the years ended December 31, 2003, 2004 and 2005 were both overstated by equal amounts of Rmb 59.5 million, Rmb 263.1 million and Rmb 239.2 million, respectively. The overstatement, however, does not affect previously reported gross profit, income from operations or net income and has no impact on cash flows or the consolidated balance sheets of previously issued financial statements.

(iii)   Due to the incorrect recognition of losses in excess of the Group's original guaranteed return on its equity investment in a 49%-owned entity that the Group accounts for using the equity method, the equity in earnings of equity investees and the net income for the year ended December 31, 2004 were understated by Rmb 1,579,000 and Rmb 821,000, respectively. For the year ended December 31, 2005, the error resulted in an overstatement of the gain on disposal of equity investment by Rmb 1,579,000 and an overstatement of net income by Rmb 821,000. The impact of the error on

485948

the consolidated balance sheet as of December 31, 2004 was an understatement of total assets by Rmb 1,579,000, an overstatement of minority interests by Rmb 758,000 and an understatement of net assets by Rmb 821,000. The error has no impact on cash flows and the consolidated balance sheet as of December 31, 2005.

67.    The form 20-F filed by the Company with the SEC on July 17, 2007, also revealed that the Company, contrary to prior attestations, was significantly deficient and suffering material weaknesses in its internal controls over its financial reporting.   The form 20-F stated in relevant part, at Item 15:

### CONTROLS AND PROCEDURES

Disclosure controls and procedures.

The Company maintains disclosure controls and procedures that are designed to ensure that information required to be disclosed in the Company's reports under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to management, including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosures. The design of any system of disclosure controls and procedures is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any disclosure controls and procedures will succeed in achieving their stated goals under all potential future conditions.

In connection with the preparation of this Annual Report on Form 20-F, as of the end of the fiscal period covered by this Annual Report on Form 20-F (December 31, 2006), the Company performed an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures pursuant to Rule 13a-15(e) and 15d-15(e) under the Exchange Act.

In performing this assessment, the Company considered the implications of certain misstatements identified in the financial statements of Qiao Xing Mobile Communication Co., Ltd. (QXMC). QXMC, a consolidated subsidiary of the Company, has

- 21 -

recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's consolidated financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.

As a result, management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003.

These misstatements in the financial statements of the Company resulted from the following four deficiencies in the Company's system of internal controls over financial reporting:

- Insufficient complement of personnel with a level of accounting knowledge, experience and training in the application of the accounting principles generally accepted in the United States of America commensurate with the Company's financial reporting requirements; this insufficient complement of personnel contributed to each of the control deficiencies discussed below:

- Ineffective controls to ensure that the appropriateness of valuation methods was adequately evaluated and any significant assumptions used were properly supported and documented (including those used by specialists engaged by the Company), and to ensure that presentation and disclosure of fair value measurements were made in accordance with the accounting principles generally accepted in the United States of America;

- Ineffective controls to identify and measure differences between the respective tax and financial reporting bases of certain assets and liabilities and to determine the applicable income tax rate to ensure that deferred taxes were accurately presented in the Company's consolidated financial statements; and

- Ineffective controls for the revenues recognition to recognize the technical service income in the period when the service was rendered and failed to recognize the revenue from the sales of co-operative products in accordance with EITF 99-19, Reporting Revenue Gross as a Principal versus Net as an Agent on a net basis as service fee income.

These control deficiencies contributed to the need to restate the Company's financial statements. As described in the restatement notes at the beginning of this Form 20-F, in Item 5 Operating and Financial Review and Prospects of this Form 20-F and in Note 2 in the financial statements for the fiscal year 2006, the impacts of the restatements on the financial statements as of December 31, 2005,

- 22 -

2004 and 2003 were to reduce the originally reported net income by Rmb 3,798,000, Rmb 21,458,000 and Rmb 16,287,000, respectively, in addition to other adjustments identified and recorded during the course of preparing financial statements. Accordingly, the Company's management determined that these control deficiencies represent material weaknesses, because they had resulted in misstatements.

In addition, as a result of the management's assessment on the effectiveness of the Company's internal control over financial reporting as of December 31, 2006, management has concluded that the following three control deficiencies identified constitute material weaknesses in addition to the four material weaknesses identified above:

- Lack of an effective enterprise risk management system;

- Lack of an effective anti-fraud program and whistleblower system; and

- Lack of an independent and effective internal audit function.

Based on this evaluation, the Company's Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were not effective as of the end of the fiscal period covered by this Annual Report on Form 20-F (December 31, 2006), as a result of the material weaknesses in the Company's internal control over financial reporting.

We have also identified significant deficiencies in our internal control over financial reporting.

**Remediation Steps to Address Material Weaknesses in the Company's Internal Control over Financial Reporting and Ineffectiveness of Disclosure Controls and Procedures**

To remediate the material weakness in the Company's internal control over financial reporting and the ineffectiveness of its disclosure controls and procedures, the Company has performed the following:

- Recruited in September 2006 a highly qualified accountant to increase the knowledge of accounting and strengthen internal controls within the Company. The management is committed to providing the accounting staff with additional support and training in order to enable them to identify unusual or complex transactions requiring further consideration by technical accounting experts or others within the organization;

- Engaged an independent registered public accounting firm other than the Company's external auditors, as the need arises, to assist in evaluating complex transactions such as the issuance of convertible bonds with warrants, as well as to assist in preparing and reviewing the appropriate supporting documentation; and

- Committed to engage an independent international risk consulting firm to establish, implement and monitor internal controls to ensure that sound corporate governance including an effective enterprise risk management system, an anti-fraud program and whistleblower system and internal audit functions is in place.

While we have begun to take the actions described above to address the material weaknesses and significant deficiencies identified, additional measures will be necessary and these measures, along with other measures we expect to take to improve our internal control over financial reporting, may not be sufficient to address the material weaknesses and significant deficiencies identified to provide reasonable assurance that our internal control over financial reporting is effective. In addition, we may in the future identify additional material weaknesses in our internal control over financial reporting.

It is expected that the above remediation measures will be completed by December 31, 2007.

### Changes in Internal Control over Financial Reporting

All changes in our internal control over financial reporting that occurred during the year ended December 31, 2006, that have a material effect or, are reasonably likely to have a material effect, on our internal control over financial reporting are disclosed above in "— remediation Steps to Address Material Weaknesses in the Company's Internal Control over Financial Reporting and Ineffectiveness of Disclosure Controls and Procedures."

### Management's Annual Report on Internal Control over Financial Reporting.

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(e) and 15d-15(e) under the Exchange Act. Under Section 404 of the Sarbanes-Oxley Act of 2002, management is required to assess the effectiveness of the Company's internal control over financial reporting as of the end of each fiscal year and report, based on that assessment, whether

- 24 -

485948

the Company's internal control over financial reporting is effective. The Company's internal control system is designed to provide reasonable assurance regarding the preparation and fair presentation of published financial statements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurance with respect to financial statement preparation and presentation and may not prevent or detect all misstatements.

Management has assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2006. In making its assessment of internal control over financial reporting, management used the criteria set forth by the Committee of Sponsoring Organizations ("COSO") of the Treadway Commission in Internal Control – Integrated Framework. These criteria include the control environment, risk assessment, control activities, information and communication and monitoring of each of the above criteria.

In performing this assessment, the Company considered the implications of certain misstatements identified in the financial statements of Qiao Xing Mobile Communication Co., Ltd. (QXMC). QXMC, a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO.

In connection with the audits of QXMC's consolidated financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.

These misstatements in the financial statements of the Company resulted from the following four deficiencies in the Company's system of internal controls over financial reporting:

- Insufficient complement of personnel with a level of accounting knowledge, experience and training in the application of the accounting principles generally accepted in the United States of America commensurate with the Company's financial reporting requirements; this insufficient complement of personnel contributed to each of the control deficiencies discussed below;

- Ineffective controls to ensure that the appropriateness of valuation methods was adequately evaluated and any significant assumptions used were properly supported and documented (including those used by specialists engaged by the Company), and to ensure that presentation and

485948

disclosure of fair value measurements were made in accordance with the accounting principles generally accepted in the United States of America;

- Ineffective controls to identify and measure differences between the respective tax and financial reporting bases of certain assets and liabilities and to determine the applicable income tax rate to ensure that deferred taxes were accurately presented in the Company's consolidated financial statements; and

- Ineffective controls for the revenues recognition to recognize the technical service income in the period when the service was rendered and failed to recognize the revenue from the sales of co-operative products in accordance with EITF 99-19, Reporting Revenue Gross as a Principal versus Net as an Agent on a net basis as service fee income.

Accordingly, the Company determined to restate the Company's prior period financial statements for the years ended December 31, 2003 through December 31, 2005 to correct the accounting practices used by it in connection with the above control deficiencies. See the restatement notes at the beginning of this Form 20-F, in Item 5 Operating and Financial Review and Prospects in this Form 20-F and in Note 2 in the financial statements for the fiscal year 2006 for further discussion of the impact of the restatements.

A material weakness in internal control over financial reporting is a significant deficiency (within the meaning of the Public Company Accounting Oversight Board ("PCAOB") Auditing Standard No. 2), or combination of significant deficiencies, that results in there being more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected. PCAOB Auditing Standard No. 2 identifies a number of circumstances that, because of their likely significant negative effect on internal control over financial reporting, are to be regarded as at least significant deficiencies as well as strong indicators that a material weakness exists, including the restatement of previously-issued financial statements to reflect the correction of a misstatement. Management evaluated the impact of the restatement of the Company's previously-issued financial statements on the Company's assessment of its system of internal control and has concluded that the four control deficiencies identified above represented material weaknesses.

485948

In addition, as a result of the management's assessment on the effectiveness of the Company's internal control over financial reporting as of December 31, 2006, management has concluded that the following three control deficiencies identified constitute material weaknesses in addition to the four material weaknesses identified above:

- Lack of an effective enterprise risk management system;

- Lack of an effective anti-fraud program and whistleblower system; and

- Lack of an independent and effective internal audit function.

Accordingly, management has concluded that, as of December 31, 2006, the Company's internal control over financial reporting was not effective based on the criteria set forth by the COSO of the Treadway Commission in Internal Control — Integrated Framework.

This annual report does not include an attestation report of the Company's independent registered public accounting firm regarding management's assessment of the Company's internal control over financial reporting. Management's report was not subject to attestation by the Company's independent registered public accounting firm pursuant to temporary rules of the Securities and Exchange Commission that permit the company to provide only management's report in this annual report.

68.     Upon these disclosures, the Company's stock plummeted approximately 21%, declining precipitously from a closing price of $13.97 per share on July 16, 2007, to $11.04 per share on July 17, 2007 on four times the average daily volume. Plaintiff has suffered significant damages as result of Defendants' violations described herein.

## QIAO XING'S VIOLATIONS OF GAAP

69.     The Company's press releases and SEC filings detailed above were materially false and misleading because Qiao Xing's financial results during the Class Period were artificially inflated due to Defendants' improper revenue recognition practices and

- 27 -

485948

methodologies as well the Company's concealment of its significant deficiencies and material weaknesses in its internal controls.]

70.    Defendants were required to cause the Company to disclose, in its periodic filings with the SEC, financial statements, and news releases, the existence of the material facts described herein and to appropriately recognize and report income in conformity with GAAP. Defendants failed to cause the Company to make such disclosures and to account for and to report income in conformity with GAAP.

71.    Due to the non-disclosures and non-GAAP accounting, the above-particularized documents which Defendants caused the Company to disseminate to the investing public during the Class Period were materially (as described in SEC Staff Accounting Bulletin No. 99) false and misleading.

72.    Defendants knew and ignored, or were reckless in not knowing, the facts which indicated that the above particularized press releases, public statements, and filings with the SEC which were disseminated to the investing public during the Class Period, were materially false and misleading for the reasons set forth above.

73.    SEC Regulation S-X requires that financial statements filed with the SEC conform with GAAP.  Financial statements filed with the SEC which are not prepared in conformity with GAAP are presumed to be misleading or inaccurate. [17 C.F.R. §210.401 (a)(1)].  The Company's financial statements which were disseminated to the investing public during the Class Period, which represented that the Company's financial position and results of operations were in conformity with GAAP, were false and misleading for the reasons alleged herein and because they constituted an extreme departure from GAAP.  Said financial statements violated the following GAAP concepts among others noted above:

- 28 -

74.    The concept that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Financial Accounting Concepts No. 1);

75.    The concept that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Financial Accounting Concepts No. 1);

76.    The concept that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Financial Accounting Concepts No. 2);

77.    The concept of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Financial Accounting Concepts No. 2);

78.    The concept that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Financial Accounting Concepts No. 2); and

79.    The concept that the quality of reliability and, in particular, of representational faithfulness leaves no room for accounting representations that subordinate substance to form (FASB Statement Of Financial Accounting Concepts No. 2).

80.    For the reasons set forth above, the financial statements which were contained within each and every Form 10-Q which Defendants caused to be filed with the SEC during the Class Period did not fairly present (AICPA Professional Standards Volume 1, U.S. Auditing Standards, Section 411) the Company's results of operations and financial position in conformity with GAAP because: the accounting principles selected and applied did not have general acceptance; the accounting principles were not appropriate in the circumstances; and the

financial statements, including the related notes, were not informative of matters that affected their use, understanding, and interpretation.

81.    The financial statements did not reflect the underlying events and transactions in a manner that presented the financial position and the result of operations within a range of acceptable limits that were reasonable and practicable to attain in financial statements.

82.    In order to inflate the price of Qiao Xing securities, Defendants caused the Company to falsely report its financial results for fiscal years 2003, 2004, and 2005.  These results were included and referenced in press releases and incorporated in other SEC filings throughout the Class Period, in violation of GAAP and SEC rules.

83.    As recently noted by the SEC, "GAAP only allows a restatement of prior financial statements based upon information 'that existed at the time the financial statements were prepared,'" and "restatements should not be used to make any adjustments to take into account subsequent information that did not and could not have existed at the time the original financial statements were prepared."  The Accounting Principles Board ("APB") has defined the kind of "errors" that may be corrected through a restatement: "'Errors in financial statements result from mathematical mistakes, mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time that the financial statements were prepared.'"  See APB 20 7-13.  The restatement at issue here was not due to a simple mathematical error or honest misapplication of a standard or oversight, but, instead, as alleged herein, was due to intentional misuse of the facts that were known at the time the financial statements were prepared and issued to the investing public.

## SCIENTER

84.    As alleged herein, Defendants acted with scienter in that Defendants, by and through their employee(s), knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of Qiao Xing were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

85.    By their concealment of the now revealed material facts, defendants were able to sell $160 million of stock in the Company's subsidiary, raise substantial amounts for payback of shareholder loans, enable the Company to receive up to $7,800,007 from the exercise of warrants, and give liquidity and value to the Wu Rui Lin's family stake in QXMC.

## PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET DOCTRINE

86.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.    Defendants made false and misleading statements of material fact, and failed to disclose material facts, during the Class Period;

b.    the misstatements and omissions were material;

c.    the securities of the Company traded in efficient and open markets (excluding the effects of fraud), the Company was followed by analysts;

d.    the Company's securities met the requirements for listing, and was listed and actively traded on the NASDAQ; and

485948

e.    the misstatements and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities.

87.    Plaintiff and members of the Class purchased their Qiao Xing stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the omitted facts.

88.    Based upon the foregoing, Plaintiff and other members of the Class are entitled to a presumption of reliance upon the integrity of the market price for the Company's securities.

<b>NO SAFE HARBOR</b>

89.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Qiao Xing who knew that those statements were false when made.

485948

**FIRST CLAIM**
**Violation Of Section 10(B) Of The Exchange Act**
**And Rule 10b-5 Of The Securities And**
**Exchange Commission against all defendants**

90.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.    This Count is asserted against the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

92.    During the Class Period, the Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which it knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class, and made various deceptive and untrue statements of material facts and omitted to state material in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class.  The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase Qiao Xing common stock during the Class Period at artificially inflated prices.

93.    During the Class Period, the Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, participated in the issuance of, the preparation and issuance of deceptive and materially false and misleading statements to the investing public as particularized above.

94.    As a result of the dissemination of the false and misleading statements set forth above, the market price of Qiao Xing common stock was artificially inflated during the Class Period.

485948

95.    Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Qiao Xing common stock. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

96.    Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

97.    By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that it: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Qiao Xing common stock during the Class Period.

### SECOND CLAIM
### For Violation Of Section 20(A) Of The Exchange Act
### (Against The Individual Defendants)

98.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.    The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the Company's expansion plans and implementation thereof, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants

- 34 -

485948

were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

100.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

101.    By virtue of their position as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

PRAYER

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against the Defendants for the damages sustained as a result of the wrongdoings of the Defendants, together with interest thereon;

C.    Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, and experts;

485948

D.     Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder, including attaching, impounding, imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff has an effective remedy; and

E.     Granting such other and further relief as the Court may deem just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

DATED:  August 14, 2007

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

GREGORY M. NESPOLE
GUSTAVO BRUCKNER
270 Madison Avenue
New York, New York 10016
Telephone:  212-545-4600
Facsimile:  212-545-4653

**LAW OFFICE OF
JACOB T. FOGEL, P.C**
Jacob T. Fogel
32 Court Street – Suite # 602
Brooklyn, New York 11201

**Attorneys for Plaintiff**

- 36 -

485948